UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAUL PONTARELLI
    *Plaintiff*

AMENDED COMPLAINT

v.

CA No.: 1-22-CV-00010-MSM-LDA

DANIEL J. MCKEE, Governor of the State of Rhode Island; RHODE ISLAND COUNCIL ON ELEMENTARY AND SECONDARY EDUCATION, by its members, Chair Barbara S. Cottam, Michael Almeida, Amy Beretta, Colleen A. Callahan, Karen Davis, Patricia DiCenso, Jo Eva Gaines, Marta V. Martinez, Lawrence Purtill; ANGELICA INFANTE-GREEN, Commissioner of Education; RHODE ISLAND DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES
    *Defendants*

Introduction

1. This complaint seeks declaratory, injunctive and equitable relief to remedy:

   (a) the refusal of the Council on Elementary and Secondary Education and the Commissioner of Education to investigate Plaintiff's special education administrative complaints and their resulting failure to adequately supervise public agencies in the provision of a free appropriate public education to children with disabilities;

   (b) the failure of the Governor of the State of Rhode Island to ensure that an interagency agreement or other mechanism for interagency coordination is in effect between the Department of Children, Youth and Families and the Department of Elementary and Secondary Education to ensure that the children in the former's care are provided all the educational services to which they are entitled under federal law;

   (c) the failure of the Department of Children, Youth and Families to make available and/or provide a free appropriate public education to children in its care placed in residential treatment

1

    facilities and hospitals who do not have a local educational agency responsible for their education; and

  (d) the failure of the Council on Elementary and Secondary Education and the Commissioner of Education to effectively monitor the Department of Children, Youth and Families and take necessary enforcement action to ensure that the latter meets the program requirements under Part B of the Individuals with Disabilities Education Act.

Parties

2. Plaintiff Paul Pontarelli is a resident of the Town of East Greenwich, Kent County, in the State of Rhode Island.

3. Defendant Daniel J. McKee is the Governor of the State of Rhode Island.

4. Defendant Rhode Island Council on Elementary and Secondary Education (the Council) is the governing body of the Rhode Island Department of Elementary and Secondary Education (RIDE). Defendants Barbara S. Cottam, Michael Almeida, Amy Beretta, Colleen A. Callahan, Karen Davis, Patricia DiCenso, Jo Eva Gaines, Marta V. Martinez and Lawrence Purtill are members of the Council and are being sued in their official capacities.

5. Defendant Commissioner of Education Angélica Infante-Green is the chief executive officer of the Council and the chief administrative officer of RIDE.

6. Defendant Department of Children, Youth and Families (DCYF) is an administrative agency within the executive branch of the Rhode Island State Government.

Jurisdiction and Venue

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the action arises under federal law, specifically the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973.

Declaratory, injunctive and equitable relief are available under 28 U.S.C. §§ 2201-02.

8. Plaintiff has exhausted all available administrative remedies at RIDE and is aggrieved by its final decision in this matter.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims herein occurred in this district and because all Defendants maintain offices in this district and are responsible for enforcing the laws relevant to this litigation in this district.

## Statutory, Regulatory and Policy Background

A. The Individuals with Disabilities Education Act (IDEA)

10. Under IDEA, each state must ensure that it provides "special education" and "related services" to all children with disabilities aged 3 to 21 residing in the state who need such education and services. 20 U.S.C. §§ 1412(a)(1), 1401(9). "Special education" means specially designed instruction which meets the unique needs of a child with a disability. 20 U.S.C. § 1401(29). "Related services" means the supportive services required to assist a child with a disability to benefit from special education. 20 U.S.C. § 1401(26). The statute directs "public agencies" to identify each eligible student with a disability, 20 U.S.C. § 1412(a)(3), and provide special education and related services to him or her by developing and implementing an "individualized education program" (IEP), an individually tailored statement that is developed, reviewed, and revised by an "IEP team." 20 U.S.C. § 1414(d). The IEP delineates the free appropriate public education (FAPE) to which the eligible student with a disability is entitled.

11. As the state educational agency for Rhode Island, RIDE is ultimately responsible for ensuring that all eligible Rhode Island children with disabilities receive FAPE in the least restrictive environment. 20 U.S.C. §§ 1412(a)(1), (a)(5), and (a)(11)(A). Policies and

procedures must be in effect to ensure that all children with disabilities residing in the State, "including wards of the State," who need special education and related services are identified, located and evaluated. 20 U.S.C. § 1401(3). RIDE also must generally supervise all educational programs in the state to ensure that they meet the requirements of Part B of IDEA. 20 U.S.C. §§ 1412(a)(11)(A). If necessary, RIDE must assume the responsibility to provide special education and related services if a public agency is unable to do so. 20 U.S.C. § 1413(g). In addition, RIDE must coordinate with other public agencies as needed to ensure that children with disabilities receive the education to which they are entitled under the IDEA. It is the responsibility of the Chief Executive Officer of the State to ensure that "an interagency agreement or other mechanism for interagency coordination is in effect" between noneducational agencies and RIDE and that the agreement or mechanism include "[p]olicies and procedures for agencies to determine and identify the interagency coordination responsibilities of each agency to promote the coordination and timely and appropriate delivery of services . . . that are necessary for ensuring FAPE to children with disabilities within the State . . ." 20 U.S.C. § 1412(12).

12. To fulfill these responsibilities, the State, among other things, must engage in "effective monitoring" to ensure that local educational agencies (LEAs) provide FAPE in the least restrictive environment to all eligible children. 20 U.S.C. §§ 1416(a). The State must use data to measure LEAs' performance, maintain an administrative complaint process, and take corrective action upon finding any violations of the Act, 20 U.S.C. §§ 1411(e)(2)(B)(i), 1415, 1416(a)(3). Furthermore, rather than focusing on technical compliance, the State's "primary focus" must be on "improving educational results and functional outcomes for all children with disabilities." 20 U.S.C. § 1416(a)(2)(A). The State must ensure that students actually receive

FAPE.  20 U.S.C. §§ 1412(a)(1), (a)(5); 1416(a)(1)(C), (a)(3)(A).

13. Under R.I. Gen. Laws §16-64-1.3(B), the LEA found to be financially responsible for the education of a child in DCYF care under § 16-64-1.1(c) "shall be responsible for the free, appropriate public education, including all procedural safeguards, evaluation and instruction in accordance with regulations under chapter 24 of this title."   Every public-school student in Rhode Island must have an LEA responsible for his or her education.

14. A claimed "allocation of resources" problem does not excuse a public agency's failure to meet the requirements of IDEA.

15. The administrative complaint processes required of states under IDEA must allow any organization or individual to file a complaint alleging a violation of IDEA. The complaint need not relate to a specific child. 34 C.F.R. § 300.153.

16. The July 23, 2013 United States Department of Education Office of Special Education and Rehabilitative Services' question-and-answer memorandum entitled "Dispute Resolution Procedures under Part B of the Individuals with Disabilities Education Act (Part B)" includes the following:

> **Question B-9:** May the State complaint procedures, including the remedies outlined in 34 CFR § 300.151(b), be used to address the problems of a group of children, i.e., a complaint alleging systemic noncompliance?
>
> **Answer:** Yes. An SEA [State Educational Agency] is required to resolve any complaint that meets the requirements of 34 CFR § 300.153. This includes a complaint alleging that a public agency has not provided FAPE to an individual child or a group of children in accordance with Part B.  As noted in the response to Question B-1, State complaint procedures provide a powerful tool to enable a State to fulfill its general supervisory responsibility to monitor implementation of Part B requirements in the State. This responsibility applies to the monitoring of its public agencies' compliance with Part B with respect to both systemic and child-specific issues. 34 CFR §§ 300.149 and 300.600(a). A State complaint alleging systemic noncompliance could be one that alleges that a public agency has a policy, procedure, or practice applicable to a group of children that is inconsistent with Part B or the Part B regulations. An example of a complaint

alleging systemic noncompliance is a complaint alleging that an LEA has a policy, procedure, or practice that would limit extended school year (ESY) services to children in particular disability categories or the type, amount, or duration of services that can be provided as ESY services. If the complaint names certain children and alleges that the same violations apply to a class, category, or similarly situated children, the SEA must review all relevant information to resolve the complaint, but would not need to examine additional children if no violations are identified in the policies, procedures, or practices for the named children. However, if the SEA identifies violations for any of the named children, the SEA's complaint resolution must include measures to ensure correction of the violations for all children affected by the alleged systemic noncompliance described in the complaint. Additionally, the SEA would need to examine the policies, procedures, and practices that may be causing the violations and the SEA's written decision on the complaint must contain procedures for effective implementation of that decision, including corrective actions to achieve compliance. 34 CFR §§ 300.152(b)(2)(iii), 300.149(a)(2)(ii), and 300.600(e).

**Question B-10:** If there is a finding in a State complaint that a child or group of children has been denied FAPE, what are the remedies?

**Answer:** In resolving a complaint in which there is a finding that a public agency has not provided appropriate services, whether to an individual child or a group of children, an SEA, through its general supervisory authority under Part B, is required to address: (1) the failure to provide appropriate services, including corrective action appropriate to address the needs of the child (such as compensatory services or monetary reimbursement); and (2) appropriate future provision of services for all children with disabilities. 34 CFR § 300.151(b). Thus, an SEA, pursuant to its general supervisory authority, has broad flexibility to determine appropriate remedies to address the denial of appropriate services to an individual child or group of children.

17. In the August 14, 2006 "Analysis of Comments and Changes" issued with the final implementing regulations for the 2004 re-authorization of IDEA, the United States Department of Education noted that:

> An SEA is required to resolve any complaint that meets the requirements of § 300.153, including complaints that raise systemic issues . . .; and State complaint procedures, which are under the direct control of the SEA, provide the parent and the school district with mechanisms that allow them to resolve differences without having to resort to a more costly and cumbersome dueprocess complaint, which, by its nature, is litigious. We believe if a State effectively implements its State complaint procedures, both parents and public agencies will generally find the process efficient and easy to initiate.

18. RIDE's "Special Education State Complaint Procedures" includes the following:

**What happens after the state complaint is submitted?**

The Office of Student, Community and Academic Supports reviews each complaint to determine whether all complaint criteria are met. If elements are omitted, the complainant will be provided an opportunity to complete the necessary components.
Upon receipt of a signed and complete special education complaint in the Office of Student, Community and Academic Supports, the complaint is logged and the investigation timeline begins.

**Investigation**

A written notice is sent to the Superintendent of the school department or public agency in which the child is enrolled requesting a response to the complaint within ten (10) business days of the notice. A copy of the complaint notice is forwarded, as applicable, to the special education director and parent, and, in addition, the attorney if representing either party.
After the conclusion of the ten (10) - day response period, RIDE further investigates the claim(s) as needed to determine the facts in the matter. Investigations may include, but are not limited to, a review of documents and records, interviews, and on-site observations.
The complainant may submit additional information, either verbally or in writing, about the allegations in the complaint.
RIDE reviews all relevant information and evidence in determining the facts and makes a determination regarding whether the alleged complaint is substantiated by fact and whether the public agency is in compliance with special education law and regulations.

**Findings Letter**

Within sixty (60) calendar days of receiving the complaint, RIDE issues a written decision to the parent and school department (or public education agency) that addresses the allegations in the complaint, including findings of fact and conclusions, and the reasons for its final decision. (An extension in time beyond the sixty (60) days is permitted only if exceptional circumstances exist with respect to a particular complaint). The Findings Letter will be translated as needed into the parents' primary language used for accessing written material.

Corrective Action:

If RIDE finds a violation of a special education requirement, the Findings Letter will address any failure to provide appropriate services, including corrective

action. Corrective action may address the needs of the child or appropriate future provision of services for all children with disabilities.

<u>The Findings Letter contains:</u>

a) Statement of the Complaint
b) Investigation Conducted
c) Findings of Fact
d) Final Conclusion
e) Reason(s) for RIDE's decision
f) Corrective Action (as applicable)
g) Recommendations (as applicable)

B. The Americans with Disabilities Act (the ADA) and Section 504 of the Rehabilitation Act of 1973 (Section 504)

19. Title II of the ADA (Title II) prohibits discrimination on the basis of disability by public entities. 42 U.S.C. § 12132. A "public entity" is any state or local government and any department, agency, or other instrumentality of a state or local government. The term covers all services, programs and activities provided or made available by public entities, including through contractual, licensing or other arrangements. 42 U.S.C. §§ 12131(1), 12132; 28 C.F.R. § 35.130. Title II's coverage extends to the State of Rhode Island and its respective agencies, departments and programs, and it requires that public schools provide children with disabilities an equal educational opportunity. 28 C.F.R. § 35.130(b)(1)(ii).

20. Public entities must make reasonable modifications to their policies, practices or procedures when necessary to avoid discrimination on the basis of disability unless the modifications would fundamentally alter the nature of the service, program or activity. 28 C.F.R. § 35.130(b)(7).

21. Section 504 of the Rehabilitation Act (Section 504) prohibits discrimination on the basis of disability by entities that receive federal financial assistance. 29 U.S.C.A. 794; 34 C.F.R. § 104.4(b)(1).

22. Section 504 requires that covered entities provide children with disabilities a free appropriate public education, commonly implemented through an individualized "Section 504 plan." A free appropriate public education under Section 504 means special education and related aids and services designed to meet the needs of children with disabilities as adequately as the needs of nondisabled children are met. 34 C.F.R. § 104.33(a), (b)(1). The implementation of an IEP developed in accordance with IDEA is one means of meeting Section 504's requirement. 34 C.F.R. § 104.33(b)(2).

23. Both Title II and Section 504 prohibit states from discriminating when providing educational services, programs and activities to children with disabilities, whether a state does so directly or through other arrangements. 28 C.F.R. § 35.130(b)(1); 34 C.F.R. § 104.4(b)(1). States may not provide educational services or administer their educational programs in a way that results in, aids or perpetuates discrimination against children with disabilities. 28 C.F.R. § 35.130; 34 C.F.R. § 104.4. The State of Rhode Island therefore must adequately supervise public agencies in the operation of their educational programs to ensure that students with disabilities are not subjected to discrimination.

### Factual Allegations

24. On November 15, 2021, Plaintiff filed 14 special education administrative complaints against RIDE and DCYF with RIDE's Office of Student, Community and Academic Supports (OSCAS). Each complaint alleged the denial of FAPE to a child in DCYF care who had been placed in a residential treatment facility.

25. On November 18, 2021, OSCAS returned the complaints to Plaintiff stating that "the Complaints cannot be investigated by OSCAS as presently written . . . In short, it appears all the Complaints are based entirely upon factually unsupported assumptions."

26. Plaintiff gathered additional information about Defendants' acts and omissions in the instant matter, obtaining public records and copying a November 29, 2021 WPRI-12 news article entitled "Someone's Going To Sue." The article contains statements from Rhode Island's Child Advocate that numerous children placed by DCYF in hospitals are not receiving educational services.

27. On December 17, 2021, Plaintiff filed a special education administrative complaint with OSCAS alleging violations of Part B of the IDEA which are described in the Introduction to this Complaint and are hereby incorporated by reference herein (a copy of the complaint is attached hereto as Exhibit 1).

28. On December 22, 2021, OSCAS issued a response to the complaint and closed its file in the matter (a copy of OSCAS' response is attached hereto as Exhibit 2).

29. When asked in separate November 22, 2021 public records requests to provide copies of the "interagency agreement or other mechanism for interagency coordination" required under IDEA, RIDE and Defendant DCYF provided different responses.

30. Contrary to the assertion in Defendant DCYF's December 7, 2021 "Response to APRA Request for Public Records" (a copy of which is attached hereto as Exhibit 3), R.I. Gen. Laws § 16-64-1.1 is not an "interagency agreement or other mechanism for interagency coordination" which meets the requirements of IDEA.

31. If R.I. Gen. Laws § 16-64-1.1 is deemed to be a "mechanism for interagency coordination" under IDEA, it is not compliant with IDEA because, as implemented by Defendants, it does not actually promote interagency coordination or provide for the timely and appropriate delivery of services to children with disabilities.

32. As of the date of this Complaint, and as specified in Plaintiff's December 17, 2021

special education administrative complaint, there are requests pursuant to § 16-64-1.1 pending before Defendant Angélica Infante-Green which were not filed by Defendant DCYF until 14 to 38 months following the placement of the child at issue in a residential treatment facility.

33.  As of the date of this Complaint, and as specified in Plaintiff's December 17, 2021 special education administrative complaint, there are requests pursuant to § 16-64-1.1 pending before Angélica Infante-Green which were originally filed by Defendant DCYF on various dates between January 2019 and October 2020.

34.  According to RIDE's website, Defendant Angélica Infante-Green decided one DCYF § 16-64-1.1 request in the 2021 calendar year. The March 8, 2021 decision held that Defendant DCYF's December 18, 2018 request failed to identify the correct local educational agency responsible for the education of the child at issue.

35.  In a related matter at the Rhode Island State Labor Relations Board (Case ULP-6311), Defendant DCYF stated the following with regard to its untimely and neglected legal efforts to find LEAs for children placed in residential treatment facilities:

> DCYF has been lobbying EOHHS (Executive Office of Health and Human Services) for at least the past three or four years for additional attorneys to address its growing caseload, particularly in the specialty courts and the Child Welfare Calendar, which handles child abuse and neglect cases, to no avail.  Indeed, DCYF was initially promised two additional attorneys for Fiscal year 2020-2021, but the funding for these positions was not forthcoming . . . Fiscal realities and allocation of resources according to higher priorities often prevent departments from getting authorization to hire for positions they believe are needed . . . EEOHHS has had other priorities for its limited resources for years . . . [there have been] years of fruitless efforts to hire additional attorneys.

36.  RIDE responded to the November 22, 2021 public records request by stating it did not have any documents responsive to the request (a copy of RIDE's response is attached hereto as Exhibit 4).

37. OSCAS, however, did describe "a mechanism for interagency coordination" in its

11

December 22, 2021 response to Plaintiff's December 17, 2021 special education administrative complaint. Again, it differed from the interagency mechanism DCYF presented to Plaintiff on December 7, 2021.

38. OSCAS' version of the "mechanism for interagency coordination" between DCYF and RIDE, i.e., "R.I. Gen. Laws §§ 42-72.4-1(a), 42-72-5, 33-15.1-2 [and] 214-RICR-03-00-1.13.1(B) (*sic*)," does not show the interagency coordination between DCYF and RIDE required by IDEA. The three referenced statutes do not provide for any actual procedures to ensure interagency coordination and the delivery of timely and appropriate special education services. Plaintiff is unaware of the state regulation referenced by OSCAS, i.e., "214-RICR-03-00-1.13(B)(1)." Plaintiff is aware of § 214-RICR-30-00-1.13(B)(1), entitled "Educational Stability," but that regulation makes no reference to RIDE nor does it contain any specific procedures to ensure timely and appropriate services. OSCAS' reference to the federal Every Student Succeeds Act is equally unavailing as "school of origin" and "best interest determination" provisions have no bearing on DCYF's placement of children in residential treatment facilities and hospitals.

39. Whatever "mechanism of agency coordination" is claimed by Defendants. it cannot meet the IDEA requirement that it "promote the coordination and timely and appropriate delivery of services" when the Rhode Island Child Advocate reports that dozens of children in DCYF care placed in hospitals are "not leaving their room, not going to school, not going outside . . .," some for nearly two years.

40. Neither the State of Rhode Island, Defendant Council on Elementary and Secondary Education nor Defendant Angélica Infante-Green can delegate RIDE's duty under federal law to monitor DCYF's compliance with IDEA to the Office of the Child Advocate.

41. On February 14, 2022, Plaintiff filed a special education administrative complaint with OSCAS alleging that the Commissioner's retention of counsel in this matter resulted in a

breach of RIDE's duty under federal law to supervise public agencies' provision of FAPE to children with disabilities (a copy of the complaint is attached hereto as Exhibit 5).

42. OSCAS did not apply RIDE's "Special Education State Complaint Procedures" to Plaintiff's February 14, 2022 complaint.

43. In a letter dated March 8, 2022, OSCAS declined to investigate Plaintiff's complaint because it "does not allege a violation of Part B of the federal Individuals with Disabilities Education Act ("IDEA") or Rhode Island special education laws and regulations . . ." (a copy of RIDE's response is attached hereto as Exhibit 6).

44. Under IDEA, it is the responsibility of Defendant Secondary Education, through its chief executive officer and the chief administrative officer of RIDE, Defendant Angélica Infante-Green, to investigate allegations of violations of IDEA contained in a duly-submitted special education administrative complaint. Contrary to the standard applied by OSCAS in this matter, it is not Plaintiff's burden to conclusively establish *per se* violations of IDEA in a special education administrative complaint. This is particularly true when OSCAS is reviewing a complaint which includes allegations against its own entity, i.e, the State Educational Agency.

<u>Count 1 -- Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.*</u>

45. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as though fully set forth herein.

46. Defendant Council on Elementary and Secondary Education and Defendant Angélica Infante-Green violated IDEA, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations by refusing to investigate Plaintiff's November 15, 2021 special education administrative complaint and by failing to adequately supervise and monitor Rhode Island's public agencies in the provision of a free appropriate public education, 20 U.S.C. § 1412(a)(11); 34 C.F.R.

13

§ 300.149.

47. Defendant Council on Elementary and Secondary Education and Defendant Angélica Infante-Green violated the IDEA, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations, by refusing to investigate Plaintiff's December 17, 2021 special education administrative complaint and by failing to adequately supervise and monitor Rhode Island's public agencies in the provision of a free appropriate public education, 20 U.S.C. § 1412(a)(11); 34 C.F.R. § 300.149.

48. Defendant Council on Elementary and Secondary Education and Defendant Angélica Infante-Green violated IDEA, 20 U.S.C. § 1400 *et seq.*, and its implementing regulations by declining to investigate Plaintiff's February 14, 2022 special education administrative complaint and by failing to adequately supervise and monitor Rhode Island's public agencies in the provision of a free appropriate public education, 20 U.S.C. § 1412(a)(11); 34 C.F.R.

Count 2  --  Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.*

49. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as though fully set forth herein.

50. As alleged in Plaintiff's December 17, 2021 special education administrative complaint, Defendant Daniel J. McKee has violated, and continues to violate, IDEA 20 U.S.C. § 1400 *et seq.* and its implementing regulations, by failing to have an interagency agreement or other mechanism for interagency coordination in effect between DCYF and RIDE so as to ensure that all services necessary for the provision of a free appropriate public education for children in DCYF care have been provided, 20 U.S.C. § 1412(a)(12), 34 C.F.R. § 300.154.

Count 3  --  Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.*

51. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive,

of this Complaint as though fully set forth herein.

52. As alleged in Plaintiff's December 17, 2021 special education administrative complaint, Defendant Department of Children, Youth and Families violated, and continues to violate IDEA, 20 U.S.C. § 1400 *et seq.* and its implementing regulations, by failing to provide or make available a free appropriate public education to children in its care placed in residential treatment facilities and hospitals who do not have a local educational agency responsible for their education, 20 U.S.C. § 1414(d).

<u>Count 4  --  Individuals with Disabilities Education Act, 20 U.S.C.A. § 1400 *et seq.*</u>

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as though fully set forth herein.

54. As alleged in Plaintiff's December 17, 2021 special education administrative complaint, Defendant Council on Elementary and Secondary Education and Defendant Angélica Infante-Green violated, and continue to violate, IDEA 20 U.S.C. § 1400 *et seq.* and its implementing regulations, by failing to effectively monitor DCYF's implementation of IDEA and by failing to enforce IDEA's requirements regarding the provision of a free appropriate public education with regard to children in DCYF care who do not have a local educational agency responsible for their education, 20 U.S.C. § 1416(a)(1)(C), (a)(3); 34 C.F.R. § 300.600.

<u>Count 5  --  Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*</u>

55. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as though fully set forth herein.

56. Defendant Council on Elementary and Secondary Education and Defendant Department of Children, Youth and Families are public entities subject to Title II of the ADA. Defendant Daniel J. McKee and Defendant Angélica Infante-Green are state officials responsible

for administering and/or supervising Rhode Island's services, programs and activities for children with disabilities, 42 U.S.C. § 12131(1).

57. By the acts and omissions alleged herein, Defendants have discriminated against children in DCYF care placed in residential treatment facilities and hospitals who do not have a local educational agency responsible for their education in violation of Title II of the ADA, 42 U.S.C. § 12131 *et seq.*, and its implementing regulations by, on the basis of disability, denying them educational services that are as effective as those provided to other children, 28 C.F.R. § 35.130(b)(1)(iii) and 34 C.F.R. § 104.4(b)(1), and by failing to reasonably modify their policies, practices or procedures as needed to avoid discrimination on the basis of disability, 28 C.F.R. § 35.130(b)(7), 34 C.F.R. § 104.4(b)(1).

58. The relief sought by Plaintiff would not require a fundamental alteration to Defendants' programs, services or activities.

<u>Count 6 -- Section 504 of the Rehabilitation Act, 29 U.S.C. § 794</u>

59. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 44, inclusive, of this Complaint as though fully set forth herein.

60. Defendants receive federal financial assistance subject to Section 504, 29 U.S.C. § 794(b)(2)(B).

61. By the acts and omissions alleged herein, Defendants have discriminated against children in DCYF care placed in residential treatment facilities and hospitals who do not have a local educational agency responsible for their education in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and its implementing regulations by, solely on the basis of disability, failing to provide these children with a free appropriate public education, including special education and related aids and services that are designed to meet their needs as adequately as the needs of nondisabled children are met, §34 C.F.R 104.33, and by denying these

16

children an educational opportunity that is equal to the opportunity afforded other children, § 34 C.F.R. 104.4(b)(1)(ii).

62. The relief sought by Plaintiff would not require a fundamental alteration to Defendants' programs, services, or activities.

### Request for Relief

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants have violated the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

B. Permanently enjoin Defendants from continuing policies, procedures and practices that violate the Individuals with Disabilities Education Act, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act;

C. Order Defendants to develop, adopt, and implement policies, procedures and practices that will ensure that the State of Rhode Island and the Department of Children, Youth and Families provide a free appropriate public education to all eligible children in DCYF care who have been placed in residential treatment facilities and hospitals and do not have a local educational agency responsible for their education.

D. Order Defendants to develop, adopt, and implement policies, procedures and practices to ensure the State of Rhode Island and the Department of Children, Youth and Families do not discriminate against students on the basis of disability, including by denying them timely appropriate special education and related services and thereby denying them an equal educational opportunity.

E. Conduct a review of all children in DCYF care who have been placed in residential treatment facilities and hospitals since November 16, 2019 who do not, or did not, have a local

educational agency responsible for their education and identify those children eligible for special education and related services under Part B of IDEA. For those children who are, or were, eligible and have not, or did not, receive timely appropriate services under Part B, order the development and implementation of corrective action measures to remedy any failures to comply with Part B related to the violations of law described in this Complaint. The corrective action must include any compensatory services and/or monetary reimbursement that may be needed to remedy the violations.

  F. Award Plaintiff his costs and fees incurred in this action; and

  G. Grant any such other relief as the Court deems just, necessary and proper.

                Respectfully submitted,

_____

Paul Pontarelli
*Pro Se*

160 Dalehill Drive
East Greenwich, RI 02818

littlebridge53@gmail.com
401-886-4489

March 25, 2022