UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

PAUL PONTARELLI
    *Plaintiff*
  v.                                 CA No.: 1-22-CV-00010-MSM-LDA

DANIEL J. MCKEE, Governor of
the State of Rhode Island; RHODE
ISLAND COUNCIL ON ELEMENTARY
AND SECONDARY EDUCATION, by its
members, Chair Barbara S. Cottam, Michael
Almeida, Amy Beretta, Colleen A. Callahan,
Karen Davis, Patricia DiCenso, Jo Eva Gaines,
Marta V. Martinez, Lawrence Purtill; ANGELICA
INFANTE-GREEN, Commissioner of Education;
RHODE ISLAND DEPARTMENT OF CHILDREN,
YOUTH AND FAMILIES
    *Defendants*

**PLAINTIFF'S OPPOSTION TO MOTIONS TO DISMISS**

Plaintiff hereby objects to the respective motions to dismiss filed by Defendants on May 6, 2022.

The Amended Complaint in this matter concerns state special education administrative complaints filed by Plaintiff, an individual, alleging systemic noncompliance concerning Defendants' responsibilities under the Individuals with Disabilities Education Act ("IDEA") with regard to children in the care of Defendant Department of Children, Youth and Families ("DCYF"). The complaints were summarily rejected by Defendant Commissioner of Education Angelic Infante-Green ("the Commissioner"), the chief executive officer of Defendant Council on Elementary and Secondary Education ("the Council"). Plaintiff's administrative complaints were neither processed nor investigated in accordance with the Commissioner's adopted procedure for handling such complaints.

1

More specifically, the systemic noncompliance alleged in the administrative complaints concerns the failure of: (1) Defendant Governor Daniel J. McKee ("the Governor") to ensure that an interagency agreement or mechanism is in effect to promote the timely and effective delivery of services contained in Part B of IDEA; (2) Defendants Commissioner and Council to monitor and generally supervise public agencies in their implementation of the requirements of Part B; and (3) Defendant DCYF to make available and provide a free appropriate public education (FAPE) to children in its care placed in residential treatment facilities and hospitals who do not have a local educational agency responsible for their education.

Under § 34 CFR 300.153, any "individual" may file an administrative complaint with the state educational agency alleging a violation of IDEA. The complaint need not relate to a specific child. The complaint may raise systemic issues.

Plaintiff is an individual. He filed administrative complaints alleging systemic noncompliance with IDEA. It is his right to do so. His right was nullified by the state educational agency when it refused to investigate his complaints per its own procedure. He is personally aggrieved by that action. The individual children adversely affected by Defendants' actions need not participate in this action because the Amended Complaint alleges structural and systemic failures to provide the public agency coordination and state oversight required by IDEA.

To establish standing, a plaintiff must demonstrate that a case or controversy exists within the meaning of Article III of the Constitution. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). To meet this requirement at the motion to dismiss stage, a plaintiff must sufficiently allege that (1) it suffered an injury-in-fact, (2) the injury is fairly traceable to the action challenged, and (3) it is likely that the injury will be redressed by a favorable decision. *Id.* at 560-561. Plaintiff has suffered an actual, concrete and particularized invasion of a legal right under federal law. The

injury was caused by the state educational agency and it can be rectified by a favorable decision in this matter.

In fact, the Commissioner's and Council's own actions refute their argument that Plaintiff lacks standing to bring this case. According to the Commissioner and the Council, an individual such as Plaintiff may file an administrative special education complaint only with their permission. If they do not approve of the complaint, they will simply refuse to investigate it and then take the position that the individual lacks standing to seek judicial review of their refusal to investigate. The end result: the Commissioner and Council can effectively void the individual's "right" to file an administrative complaint. This is surely not the right that IDEA provides. It is therefore clear that Plaintiff has standing to challenge the dismissal of his administrative complaints, and Defendants' argument to the contrary is not only legally incorrect but falls under its own weight.

Nor is Plaintiff required to exhaust all administrative remedies in the circumstances of this case. To do so would be futile and inadequate for several reasons. First, the state educational agency has already denied Plaintiff access to an administrative remedy, i.e., the administrative complaint process. The Commissioner and Council have "refused to consider and resolve complaints of system-wide violations" of IDEA.[1] The action under review herein is that of the <u>state</u> educational agency, not a local educational agency. Why does the state educational agency need a state administrative hearing officer to review its decision not to investigate and remedy Plaintiff's complaints? If the state educational agency had any doubt about whether to investigate a complaint, wouldn't it just investigate the complaint? What is to be gained, and what is to be lost in timely Part B services for children, by referring this matter to a state hearing officer who will undoubtedly be presented with the same arguments from Defendants that are being raised in

---

[1] See *Mrs. W. v. Tirozzi*, 832 F.2d 748, 759 (1987).

their instant motion to dismiss? The futility of a due process hearing in these circumstances is obvious.[2]

Another exception to the exhaustion requirement is when the plaintiff alleges systemic violations of IDEA. The Ninth Circuit Court of Appeals defines the exception as follows:

> [A] claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.[3]

Exhaustion has been excused in Second Circuit cases alleging systemic violations when

> the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.[4]

As fully set forth in the Amended Complaint, this case alleges systemic violations of IDEA flowing from the Governor's failure to comply with the statutory requirement that there be "an interagency agreement or other mechanism for interagency coordination" in effect between the Rhode Island Department of Elementary and Secondary Education (RIDE) and DCYF "to promote the coordination and timely and appropriate delivery of services . . . that are necessary for

---

[2] In *Christopher W. v. Portsmouth School Committee,* 877 F.2d 1089, 1094 (1st Cir. 1989), the Court explained that the exhaustion of remedies requirement "enables the agency to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes, and is credited with promoting accuracy, efficiency, agency autonomy and judicial economy." Here, the Commissioner and Council chose to decline this opportunity by ignoring their administrative complaint procedure and closing the file on Plaintiff's allegations immediately upon receipt.
[3] *Doe v. Arizona Department of Education*, 111 F.3d 678, 681 (9th Cir. 1997).
[4] *J.S. ex rel. N.S. v. Attica Central Schools,* 386 F.3d 107, 114 (2nd Cir. 2004).

ensuring FAPE to children with disabilities within the State . . ."[5] This structural violation has been compounded by the Commissioner's and Council's general practice of failing to monitor and supervise the implementation of Part B with regard to children in DCYF care placed in residential treatment facilities and hospitals who do not have a local educational agency responsible for their education.[6] Consequently, there are overlapping exceptions to the exhaustion requirement in this case. The administrative hearing process is simply not able to restructure the noncompliant Part B relationship between RIDE and DCYF and resolve the large number of cases of children adversely affected by the systemic violations herein. On the other hand, Plaintiff's administrative complaints presented the Commissioner and the Council with the opportunity to identify and correct Defendants' systemic noncompliance. Inexplicably, they quickly declined that opportunity.

A substantial number of DCYF petitions to determine local educational agency responsibility for children in DCYF care are pending in the RIDE hearing system. The number of petitions became known to Plaintiff through public records requests he filed. He presented copies of those records to the Commissioner and Council in his administrative complaints to illustrate the widespread impact of Defendants' systemic noncompliance with IDEA. Yet the Commissioner and the Council state in their motion to dismiss that the children referenced in Plaintiff's complaints are "anonymous." RIDE, however, in response to the public records requests filed by Plaintiff, redacted the names of these children from the DCYF petitions in its possession. As noted, Plaintiff submitted copies of the very same RIDE-redacted petitions with his administrative

---

[5] §34 CFR 300.154.

[6] The interagency mechanism claimed to be in effect by Defendants neither meets IDEA standards nor is remotely effective. According to RIDE's website, as of the date of Plaintiff's response, the Commissioner of Education has not issued a DCYF-requested residency determination to assign educational responsibility for a child placed in a residential treatment facility to a local educational agency since October 18, 2019.

complaints. Repeating what they said in response to Plaintiff's administrative complaints, the Commissioner and Council continue to claim in their motion that these children are "anonymous." But it was RIDE who redacted the names of these children from the original DCYF petitions when responding to Plaintiff's public records requests. RIDE has the names of these children in the DCYF petitions on file in the RIDE Legal Office. Plaintiff submits that the Commissioner's and Council's "anonymous" children statement "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves" and provides compelling justification to excuse the exhaustion requirement. The statement also refutes their argument that Plaintiff failed to state a claim in this matter.

After accusing Plaintiff of making conclusory statements in the Amended Complaint, the Commissioner and Council make some of their own in support of another fiction: that RIDE and DCYF have an "interagency agreement or other mechanism for interagency coordination" that is compliant with IDEA. The Commissioner and Council fail to explain <u>how</u> their agreement or mechanism meets the requirements of §34 CFR 300.154, particularly the "[p]olicies and procedures" for RIDE and DCYF "to determine and identify the interagency coordination responsibilities of each agency to promote the coordination and timely and appropriate delivery of services . . . that are necessary for ensuring FAPE . . ." Again, the underpinning for the Commissioner's and Council's claim that Plaintiff failed to state a claim is baseless.

Furthermore, as set forth in the Amended Complaint, Defendants' systemic noncompliance with the requirements of Part B of IDEA inexorably results in discrimination against children with disabilities in DCYF care placed in residential treatment facilities or hospitals who need the benefit of §34 CFR 300.154,. Unlike nondisabled children, these children do not have a local educational agency responsible for their education. This discrepancy violates Section 504 of the Rehabilitation

6

Act and the Americans With Disabilities Act, both anti-discrimination statutes.

The Governor and DCYF also ignore the systemic-noncompliance nature of the Amended Complaint. The legal theory behind their motion to dismiss does not fit the facts of the case. In addition, like the Commissioner and the Council, DCYF claims "unidentified children" are involved in this case, even though the DCYF residency determination petitions for each child are attached to the Amended Complaint. Perhaps DCYF is not even aware of the children in its care who have yet to be assigned a responsible local educational agency.

DCYF is a "public agency" as that term is defined by IDEA.[7] It therefore has a duty to fulfill the Part B requirements that attach to such an entity. Furthermore, under Rhode Island law, it has educational responsibility for children in its care placed in residential facilities.[8] Finally, the Governor is the "Chief Executive Officer of the State" as that term is used in §34 CFR 300.154. He therefore is responsible for the duty imposed therein. Neither the Governor nor DCYF is "misjoined" in this action. As part of the ongoing systemic violation of IDEA concerning children in DCYF care who do not have local educational agencies responsible for their education, the Governor and DCYF need to take the action required of them under IDEA to remedy their failure to comply with the statute.

For the reasons set forth above, Plaintiff requests that the respective motions to dismiss filed by the Commissioner/Council and the Governor/DCYF be dismissed.

                                                      Respectfully submitted,

---

[7] §§34 CFR 300.33 and 12.
[8] R.I. Gen. Laws §42-72-5(b)(22).

Paul Pontarelli
*Pro Se*

160 Dalehill Drive
East Greenwich, RI 02818

littlebridge53@gmail.com
401-886-4489

May 20, 2022

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May 2022, I electronically filed and served the this document on the parties of record through the ECF filing system. The document is available for viewing and/or downloading from the ECF System.