UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PAUL PONTARELLI
Plaintiff,

v.

DANIEL J. MCKEE , Governor of the State of Rhode Island; RHODE ISLAND COUNCIL ON ELEMENTARY AND SECONDARY EDUCATION, by its members, Chair Barbara S. Cottom, Michael Almeida, Amy Beretta, Collen A. Callahan, Karen Davis, Patricia DiCenso, Jo Eva Gaines, Marta V. Martinez, Lawrence Purtill; ANGELICA INFANTE-GREEN, Commissioner of Education; RHODE ISLAND DEPARTMENT OF CHILDREN, YOUTH, AND FAMILIES
Defendants.

CA No.: 1:22-cv-00010-MSM-LDA

**DEFENDANTS' JOINT REPLY TO PLAINTIFF'S OPPOSITION TO THEIR MOTIONS TO DISMISS**

All the Defendants, by and through their undersigned counsel, submit this Joint Reply in response to Plaintiff's Opposition (ECF No. 17) to their Motions to Dismiss (ECF Nos. 15 and 16).

## I. PLAINTIFF'S DISSATISFACTION WITH HOW EDUCATION DEFENDANTS PROCESSED HIS ADMINISTRATIVE COMPLAINTS DOES NOT AMOUNT TO "PERSONAL INJURY" NECESSARY FOR ARTICLE III STANDING

In response to Defendants' argument that he lacks standing (ECF No. 15 at § II(B)), Plaintiff cites to 34 C.F.R. § 300.153, claiming that it allows "any 'individual'" to file a state administrative complaint, or "SAC," and that the Education Defendants "nullified" that "right" when they declined to investigate his SACs. ECF No. 17 at p.2. Even if true, that is not the sort of

"personal injury" that Article III standing requires, which Plaintiff himself makes clear by quoting the seminal case on Article III standing, *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992), and correctly stating that "a plaintiff must sufficiently allege [,among other things,] that (1) it suffered an injury-in-fact." ECF No. 17 at p.2. The Plaintiff's Amended Complaint alleges that certain IDEA violations resulted in denials of FAPE *to students with disabilities*, but does not contain any allegations that *Plaintiff* suffered an injury-in-fact. To the contrary, the face of Plaintiff's Amended Complaint makes clear that he is not a student, parent, or guardian, and that he is not otherwise related in any way to the individuals who allegedly were injured. That uncurable and undisputed fact is futile to his case.

Moreover, Plaintiff's attempt to attain standing by claiming that his injury-in-fact stems from an unfavorable administrative decision (ECF No. 17 at p.2) lacks legal support. "The Supreme Court has ruled repeatedly that the 'deprivation of a procedural right' alone, like an agency's failure to process an administrative complaint, 'is insufficient to create Article III standing.' Instead, the plaintiff must identify 'some concrete interest that is affected by the [procedural] deprivation[.]'" *Campaign Legal Ctr. v. FEC*, 860 F. App'x 1, 4 (D.C. Cir. 2021) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) and citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016) and *Lujan*, 504 U.S. at 573 n.8). "'For a statutory violation to constitute an injury in fact, . . . the statute must protect' some 'concrete interest' *of the plaintiff*, meaning that the law must 'afford *the putative plaintiff* a right to be free of a harm capable of satisfying Article III.'" *Id.* (quoting *Jeffries v. Volume Servs. America, Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) (emphases added)).

In other words, Plaintiff's lack of standing at the administrative level dooms his attempt to challenge the dismissal of his SACs in Court. Nowhere in the Amended Complaint does Plaintiff

allege that Defendants' actions deprived *him* of a FAPE. As such, Plaintiff's lawsuit is akin to an inappropriate taxpayer suit (if a taxpayer was a disgruntled former employee of the entity he is now trying to sue).[1] *See Lujan*, 504 U.S. at 573 n.8 ("We do *not* hold that an individual cannot enforce procedural rights; he assuredly can, so long as the procedures in question are designed to protect some threatened concrete interest of his that is the ultimate basis of his standing."). "[M]ere interest in seeing the government turn square corners is not the kind of particularized interest that can satisfy the most basic constitutional prerequisite for standing." *Osediacz v. City of Cranston*, 414 F.3d 136, 142 (1st Cir. 2005).

For the foregoing reasons (and those set forth in the Education Defendants' Motion to Dismiss (ECF No. 15 at § II(B)), the Court should, respectfully, dismiss Plaintiff's Amended Complaint for lack of standing.

## II. PLAINTIFF IS NOT ENTITLED TO WAIVER OF ADMINISTRATIVE PREREQUISITES

In his Opposition, Plaintiff opines that he is not required to "exhaust all administrative remedies," as doing so "would be futile and inadequate" because (1) he already filed SACs and (2) he has alleged a "systemic" IDEA violation. ECF No. 17 at pp.3-4. As matter of law, neither point is correct – or allows him to evade the exhaustion bar.

---

[1] *See City. of Westchester v. New York*, 286 F.3d 150, 152 (2nd Cir. 2002) ("Since Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415, *see* 20 U.S.C. § 1415(i)(2)(A), but did not expressly provide a private right of action in favor of a county, educational agency or any other entity seeking to challenge the lack of an interagency agreement required by § 1412(a)(12), we find it extremely unlikely that Congress intended to do so."); *Va. Office of Prot. & Advocacy v. Va., Dep't of Educ.*, 262 F. Supp. 2d 648, 661 n.5 (E.D. Va. 2003) ("Only the parents of a disabled child can be 'aggrieved parties' who have a private cause of action under 20 U.S.C. § 1415(f)and (i)."). *See also Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 630 (6th Cir. 2010) ("We agree with the reasoning of the Second Circuit in *County of Westchester*."); *Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 372 (3d Cir. 2005) (same).

First, Plaintiff was compelled to exhaust the administrative remedy of filing a due process complaint before seeking court involvement and has no basis for complaining it would have been futile. Plaintiff did file a SAC, which OSCAS rejected, ruling that his complaint could not be investigated because it "fails to state a violation" of any law and "fails to provide any actual facts to support [the] conclusion that RIDE and/or [DCYF] have denied any children in DCYF custody the opportunity for a [FAPE] in violation of" any law. ECF No. 13-3. Plaintiff had no right of appeal from this denial,[2] but could have filed a due process claim if he had one.[3]

Instead, Plaintiff jumped into federal court, in contravention of the IDEA exhaustion mandate, complaining now that it would have been a waste of time to file a due process complaint and suggesting that a "state hearing officer" would "undoubtedly be presented with the same arguments from Defendants that are being raised in their instant motion to dismiss[.]" ECF No. 17 at pp.3-4. The "futility of a due process hearing in these circumstances is obvious," he argues. *Id.* at p.4.

Presumably, Plaintiff is referring to the *neutral* hearing officers entrusted with adjudicating "any matter relating to the identification, evaluation, or educational placement of the child, or the provisions of a [FAPE] to such child" in an *impartial* due process hearing. ECF No. 15 at p.4. One need not indulge Plaintiff's conclusory intimation that somehow, he would not get a fair shake before hearing officers appointed by the state agency where he once served. He did not file any

---

[2] As the Education Defendants make clear in their Motion to Dismiss (ECF No. 15 at § I(A)), the IDEA's regulatory scheme does *not* include a right of appeal from an unfavorable SAC filed through the state complaint procedure.

[3] *See* 200 RICR-20-20-6.8.1(H)&(I) (state regulations incorporating 34 C.F.R. §§ 300.507 & 300.508, which provide that parent or public agency may file due process complaint on certain matters, including provision of FAPE to child, and specifying that complaint must set forth, *inter alia*, name and address of child, and name of school child attending).

such due process complaint, and that ends the exhaustion inquiry. Any speculation as to the outcome of a theoretical filing is irrelevant and improper.

Second, Plaintiff attempts to avoid the exhaustion mandate by insisting that his Amended Complaint sets forth a claim of a systemic violation of the IDEA. ECF No. 17 at pp.4-6. He relies upon two cases, *Doe v. Arizona Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997), and *J.S. v. Attica Cent. Sch.*, 386 F.3d 107 (2d Cir. 2003), neither of which support his position.

In *Doe*, 111 F.3d at 685, the U.S. Court of Appeals for the Ninth Circuit *required* IDEA exhaustion, upholding the district court's decision to dismiss IDEA and related claims for failure to exhaust. The plaintiff, John Doe, was housed with other juveniles at the county jail. *Id.* at 679-80. The Department of Education had overlooked providing services to Doe and other inmates because it did not know of the existence of this juvenile population in the facility. *Id.* at 680. Without first invoking the administrative process under the IDEA, Doe filed suit on behalf of a class of disabled juveniles in the county jail. *Id.* He claimed to be excused from the exhaustion mandate because he raised "systemic" or "structural" claims. *Id.* at 681. The Ninth Circuit disagreed and held that the class could obtain relief only through the administrative process. It stated that "whether the particular needs of any individual inmate are being met is the kind of fact-intensive inquiry" well suited to that process. *Id.* at 683-84.

In *J.S.*, 386 F.3d at 116, the U.S. Court of Appeals for the Second Circuit waived the exhaustion requirement, upholding the district court's decision to not dismiss IDEA and related claims for failure to exhaust. It did so, however, under circumstances distinct from Plaintiff's here. In *J.S.*, six students alleged that the school district failed to provide them with FAPE, detailing each student's substantial deprivations in the complaint. *Id.* at 110-12. The deprivations included, *inter alia*, lack of access to classes and facilities, including the cafeteria, and outright denial of

services, including transition services. *Id.* The school district argued on interlocutory appeal that the district court had erred in not dismissing the complaint for failure to exhaust. *Id.* at 112. The Second Circuit disagreed. Unlike "textbook" cases, it stated, the complaint alleged that in *specific* ways the school district had failed *completely* to prepare and implement IEPs. *Id.* at 114-15. "In addition to describing the circumstances of each individual plaintiff, the complaint allege[d] twenty-seven separate ways in which the School District ha[d] failed to comply with its obligations to students who are or may be disabled, and to those students' parents. These allegations include[d] failures to evaluate, to prepare or implement Individual Education Programs, to provide notice to parents, and to provide appropriate training." *Id.* at 111-12. The "nature and volume of complaints were incapable of correction by the administrative hearing process," the Second Circuit, held, and presented a "high probability of inconsistent results." *Id.* at 114. Thus, under those particular facts, exhaustion was excused.

The Plaintiff fails to cite *Parent/Professional Advocacy League v. City of Springfield*, 934 F.3d 13 (1st Cir. 2019). Unlike the previous two decisions, *Parent/Professional Advocacy League* is binding here, and it undercuts Plaintiff's position decisively. In *Parent/Professional Advocacy League*, students at a public special education day school and two associations (the Parent/Professional Advocacy League and Disability Law Center) alleged that the school district violated the IDEA and other statutes by segregating students with mental health disabilities in a separate and inferior school. *Id.* at 17. The First Circuit upheld the district court's determination that *the lawsuit was subject to the IDEA and its exhaustion requirement and that,* because some of the members of plaintiffs' putative class failed to first pursue their claims administratively, the claims were barred from federal court. *Id.* at 22-23. In so holding, the First Circuit set forth the

narrow circumstances under which administrative exhaustion may be excused. *Id.* at 21, 24-28. Specifically with respect to "systemic" suits, it explained:

> Other circuits have defined an exception to the IDEA's exhaustion rule for "systemic" suits. But, to fall under that exception, the alleged violations must be "truly systemic . . . in the sense that the IDEA's basic goals are threatened on a systemwide basis." *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1305 (9th Cir. 1992). For example, the exhaustion requirement has been relaxed or waived in suits alleging systemwide violations of the processes for identifying and evaluating students with disabilities. *See DL v. D.C.*, 713 F.3d 120, 124 n.4 (D.C. Cir. 2013); *J.G. v. Bd. of Educ. of the Rochester City Sch. Dist.*, 830 F.2d 444, 445 (2nd Cir. 1987) (alleging systemwide failures at multiple stages of the IDEA's processes for evaluating and placing students in special education). Suits labeled "systemic" also tend to "challenge[ ] policies or practices," or administrative failures, "at the highest administrative level." *Hoeft*, 967 F.2d at 1305; *see also J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 114 (2d Cir. 2004); *cf. Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989) (stating that exhaustion may not be required for review of such policies if they present "*a pure matter of law*" (*quoting Ezratty v. Comm. of P.R.*, 648 F.2d 770, 774 (1st Cir. 1981))).

*Id.* at 27. After applying this criterion, the First Circuit rejected plaintiffs' argument that their lawsuit alleged "systemic" violations, holding that, to the contrary, "a finding that one student with a certain type and degree of mental health disability should have been mainstreamed would not mean that another student with a different type, or even just a different degree, of mental health disability should have received the same services or been mainstreamed." *Id.* at 27-28. The First Circuit also addressed plaintiffs' ADA claims at length, holding that the "gravamen" of those claims concerned the denial of FAPE, and thus the ADA claims also were subject to administrative exhaustion under the IDEA. *Id.* at 24-27.[4] *See also T.R. v. Sch. Dist. of Philadelphia*, 4 F.4th 179,

[4] Also of note is that the First Circuit held that the plaintiff organizations (The Parent/Professional Advocacy League and the Disability Law Center), who sued "on behalf of their constituents," lacked standing to bring IDEA-related claims. *Parent/Professional Advocacy League,* 934 F.3d at 23, 33-35. The Court so held despite the assumption that these organizations "can show a justiciable case or controversy," on the basis that their constituents failed to exhaust IDEA's administrative procedures. *Id.* at 34. If students "cannot sue individually . . . without IDEA exhaustion," the Court reasoned, "there is no clear reason why the organizations should be able to

191, 193-194, 195-96 (3rd Cir. 2021) (IDEA claim did not address systemic legal deficiencies, and thus none of the plaintiff's claims were exempt from IDEA's exhaustion requirement).

Here, in contrast to the plaintiffs in *Doe*, *J.S.*, and *Parent/Professional Advocacy League*, Plaintiff has not presented a single student, child, or parent who has detailed or even articulated an alleged violation of the IDEA, or any law. Instead, the only "plaintiff" is the Plaintiff himself, who makes two contradictory claims. In one breath, Plaintiff claims that as an individual, he was "harmed" by a failure of the Education Defendants to "investigate" and "monitor/supervise" other public agencies. ECF No. 13-1 at ¶¶ 46-48.[5] Then, in the next breath, he purports to act on behalf of a group of children in DCYF custody, alleging (generally and vaguely) that some may have been entitled to special education services, and some may not have received FAPE. *Id.* at ¶¶ 52, 54, 57, 61.

What is more, Plaintiff bases his speculation that FAPE has been denied on petitions by DCYF seeking *reimbursement* for educational services *that already have been provided*, which is fatal to the survival of his claims. A review of the petitions—which are within the four corners of the Amended Complaint by virtue of their attachment to thereto—reveals that they are merely

---

essentially press those students' claims in the aggregate without that exhaustion." *Id.* The Court also pointed out:

> Adjudication of the claims . . . would turn on facts specific to each student, including unique features of each student's unique disability, needs, services, and placement. Efficient and successful judicial resolution of the claims would thus require participation and cooperation by numerous students and parents. And, as we stated, representative standing is inappropriate where such participation is necessary.

*Id.* at 35. So, too, here.

[5] As argued *supra*, "refusing to investigate" a meritless state administrative complaint is not a violation of the IDEA – and falls short of the showing needed to establish that the Education Defendants were "failing to adequately supervise and monitor" the delivery of FAPE in Rhode Island.

DCYF collection actions for placements in residential facilities. ECF No. 13-2 at pp.9-53. By statutory definition, the facilities listed in the petitions are those that provide educational services, including special education services. R.I. Gen. Laws § 16-64-1.1(c) (children placed by DCYF in a "residential-treatment program, group home, or other residential facility . . . which includes the delivery of educational services provided by that facility . . . shall have the cost of their education paid for" by "the city or town determined to be responsible to DCYF for a per-pupil special-education cost pursuant to § 16-64-1.2[.]").[6]

Therefore, the very documents on which Plaintiff rests his Amended Complaint undercut that same complaint. The Plaintiff's speculation that all children in DYCF custody for whom DCYF is seeking reimbursement under R.I. Gen. Laws § 16-64-1 *et seq*. are being denied FAPE fails factually and as a matter of law; moreover, it is the very kind of sweeping denunciation that the First Circuit rejected in *Parent/Professional Advocacy League*. 934 F.3d at 30-31 (school district educated a larger number of students with behavioral disabilities in neighborhood schools rather than in separate school and expert report found no "boilerplate IEP" or district-wide method that would suggest a common mode of exercising discretion without individualized consideration

[6] For example, Plaintiff references Harmony Hill throughout Attachment 2 to Exhibit 1 of the Amended Complaint. ECF No. 13-2 at pp.9, 12, 17, 19, 22, 48. At Harmony Hill, "[r]egular and special education certified teachers work in close collaboration with resource, speech-language and occupational therapists, behavioral assistants, physical education/health, work study, art and music teachers forming a comprehensive faculty under a Special Education Director." *Harmony Hill School Website*, https://harmonyhillschool.net/education-programs/ (last visited June 3, 2022). Its Kindergarten through Grade 12 special education and regular education school program is certified by RIDE. *Id.* Harmony Hill is a "residential-treatment program" or "other residential facility" "which includes the delivery of educational services" under R.I. Gen. Laws § 16-64-1.1(c). The Court may consider the publicly accessible information on the website in assessing the instant Motion. *See Larson v. Perry*, 2020 WL 1495883, C.A. No. 19-cv-10203-IT, at *8 (D. Mass. Mar. 3, 2020) (mem.) (on a motion to dismiss, it is "appropriate for courts to look outside the four corners of a complaint where the record includes 'documents the authenticity of which are not disputed by the parties' or documents 'central to plaintiffs' claims' and 'sufficiently referred to in the complaint.'" (*quoting Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

of student need, as is required under the IDEA). Like the *Parent/Professional Advocacy League* plaintiffs, who asked the court to infer denials of FAPE from the mere existence of a separate school for children with special needs, Plaintiff here asks this Court to infer denials of FAPE from the petitions that, *on their face*, seek reimbursement for special education services that have been and/or are being delivered. Not only does Plaintiff fail to allege a systemic violation, but he fails to allege any IDEA violation at all. Therefore, even if Plaintiff had standing, which he does not, he cannot gain entrance into Federal Court by relying on speculative inferences, particularly without first presenting details regarding same to a neutral hearing officer by way of a due process complaint.

## III. PLAINTIFF HAS NOT SUFFICIENTLY OBJECTED TO STATE DEFENDANTS' MOTION TO DISMISS

As a final note, Plaintiff's Opposition does not substantively address the additional arguments set forth in the Motion to Dismiss brought by Governor McKee and DCYF (the State Defendants). In response to the State Defendants' comprehensive arguments that they are not educational agencies, lack any authority to address the alleged IDEA violations, and therefore have been mis-joined in this suit (ECF No. 16 at pp.1-16), Plaintiff musters a mere half of a page. ECF No. 17 at p.7. To the extent that Plaintiff's underdeveloped arguments in this small section address the actual bases for State Defendants' dismissal from this case, those arguments lack material and legal support. Because Plaintiff has not provided a substantive rebuttal to the State Defendants' arguments, his nominal objection to dismissal of the suit as to them should not be entertained. *See, e.g., Lebron v. Commonwealth of P.R.,* 770 F.3d 25, 31 (1st Cir. 2014) ("The parents provide us with no law or other reasoning to support the legal proposition that a private school acts as an agent of a state educational agency solely because the school may generally receive public grant money. 'It is not our job to put flesh on the bare bones of an underdeveloped argument.' *U.S. v.*

*Mathur*, 624 F.3d 498, 508 (1st Cir.2010) (citation omitted). We consider this argument waived for our purposes."); *U.S. v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Respectfully submitted,

DANIEL J. MCKEE, in his official capacity as GOVERNOR of the State of Rhode Island, and RHODE ISLAND DEPARTMENT OF CHILDREN, YOUTH, & FAMILIES

By:
PETER F. NERONHA
ATTORNEY GENERAL

/s/ *Natalya A. Buckler*

Natalya A. Buckler, Esq. (#8415)
Special Assistant Attorney General
150 South Main Street
Providence, RI 02903
(401) 274-4400 ext. 2022
(401) 222-2995 Fax
nbuckler@riag.ri.gov

Dated: June 3, 2022

ANGÉLICA INFANTE-GREEN,
Commissioner of Education,

By:

/s/ *Sara A. Rapport*

Matthew H. Parker (#8111)
Sara A. Rapport (#6184)
WHELAN CORRENTE & FLANDERS LLP
100 Westminster Street, Suite 710
Providence, RI 02903
(401) 270-4500 (Work)
(401) 270-3760 (Fax)
(401) 559-7268 (Cell)
mparker@whelancorrente.com

Dated: June 3, 2022

RHODE ISLAND COUNCIL ON ELEMENTARY AND SECONDARY EDUCATION, by its members, Chair Barbara S. Cottom, Michael Almeida, Amy Beretta, Colleen A. Callahan, Karen Davis, Patricia DiCenso, Jo Eva Gaines, Marta V. Martinez, Lawrence Purtill;

By:

/s/ *Paul V. Sullivan*

Paul V. Sullivan (#5712)
SULLIVAN LAW OFFICES, PC
33 Broad Street, Suite 302
Providence, RI 02903
(401) 861-9900 (Work)
(401) 861-9977 (Fax)
psullivan@psullivanlaw.com

Dated: June 3, 2022

**CERTIFICATE OF SERVICE**

I, the undersigned, do hereby certify that on this 3rd day of June 2022, I electronically filed and served the within document through the ECF filing system. The document is available for viewing and/or downloading from the ECF System.

*/s/ Natalya A. Buckler*