UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| PAUL PONTARELLI, ) | |
| Plaintiff, ) | |
| v. ) | |
| DANIEL J. MCKEE, Governor of the State of Rhode Island; RHODE ISLAND COUNCIL ON ELEMENTARY AND SECONDARY EDUCATION, by its members, Chair Barbara S. Cottom, Michael Almeida, Amy Beretta, Colleen A. Callahan, Karen Davis, Patricia DiCenso, Jo Eva Gaines, Marta V. Martinez, Lawrence Purtill; ANGELICA INFANTE-GREEN, Commissioner of Education; RHODE ISLAND DEPARTMENT OF CHILDREN, YOUTH AND FAMILIES, ) | C.A. No. 1:22-CV-00010-MSM-LDA |
| Defendants. ) | |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

The plaintiff, Paul Pontarelli, filed this action against Governor Daniel J. McKee, the Rhode Island Department of Children, Youth & Families ("DCYF"), the Rhode Island Council on Elementary and Secondary Education, and Commissioner of Education Angelica Infante-Green (collectively, the "Defendants") alleging that the rights of children with disabilities in the care of DCYF are being violated through systemic noncompliance with the requirements of the Individuals with Disabilities

1

Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, as well as the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.  The Court now considers the Defendants' Motion to Dismiss (ECF No. 15) this complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6).

For the reasons below, Defendants' Motion to Dismiss is GRANTED and Mr. Pontarelli's claims are dismissed without prejudice.

I. BACKGROUND

On November 15, 2021, Mr. Pontarelli filed fourteen separate state administrative complaints ("SACs") against the Rhode Island Department of Education ("RIDE") and DCYF, each alleging the denial of a free appropriate public education ("FAPE") to a child in DCYF care who had been placed in a residential treatment facility.  (ECF No. 13-1 ¶ 24.)  A FAPE is guaranteed to every child under the IDEA.  34 CFR § 300.101.  Three days later, RIDE's Office of Student, Community and Academic Supports ("OSCAS") responded that it could not investigate Mr. Pontarelli's SACs, stating that they were "based entirely on factually unsupported assumptions."  (ECF No. 15 at 6.)

On December 17, 2021, Mr. Pontarelli filed another SAC alleging violations of the IDEA.  (ECF No. 13-1 ¶ 27.)  This SAC contained additional information, much of it obtained through public records requests.  First, Mr. Pontarelli attached petitions filed by DCYF with RIDE for local educational agency ("LEA")

determinations for children in residential treatment facilities. These petitions, Mr. Pontarelli claims, show excessive delays in ensuring these children have LEAs that are responsible for their education and related obligations under disability-related laws. (ECF 13-2 at 1-3.) Second, he included responses by RIDE and DCYF to public records requests that he claims show their failure to establish "an interagency agreement or other mechanism for interagency coordination" necessary "to promote the coordination and timely and appropriate delivery of services … that are necessary for ensuring FAPE to children with disabilities" as required by the IDEA, *see* 20 U.S.C. § 1412(a)(12), §34 CFR 300.154. *Id.* Third, he attached a November 29, 2021, *WPRI 12 News* article titled "Someone's Going to Sue" detailing failures by DCYF and RIDE to provide educational services to many children placed by DCYF in residential treatment facilities. *Id.* at 3. In the *WPRI 12 News* article, the Rhode Island Child Advocate is quoted as saying that there are 30 children and teenagers at Bradley Hospital and ten at Hasbro Children's Hospital "who don't belong there," that these children are "not leaving their room, not going to school, not going outside," and that some of these children had been there for nearly two years. *Id.* Five days after its filing, OSCAS dismissed Mr. Pontarelli's SAC, stating that it "fail[ed] to state or otherwise contain specific factual allegations relevant to a denial of FAPE." (ECF No. 15 at 7.)

In response to this dismissal of his SACs, Mr. Pontarelli filed this lawsuit, which makes five allegations. First, Mr. Pontarelli claims that the Council on Elementary and Secondary Education and Commissioner Infante-Green violated

the IDEA, 20 U.S.C. § 1400 *et seq.*, by refusing to investigate his SACs as well as failing to adequately supervise and monitor Rhode Island's public agencies in the provision of a FAPE. (ECF No. 13-1 ¶ 46-48.) Second, he argues that Governor McKee violated the IDEA and its implementing regulations, 20 U.S.C. § 1412(a)(12), §34 CFR 300.154, by failing to have an interagency agreement or other mechanism for interagency coordination in effect between DCYF and RIDE to ensure that children in DCYF care are provided a FAPE. *Id.* ¶ 50. Third, Mr. Pontarelli alleges that DCYF violated the IDEA, 20 U.S.C. § 1414(d), by failing to provide a FAPE to children in its care placed in residential treatment facilities. *Id.* ¶ 52. Fourth, Mr. Pontarelli alleges that the Council on Elementary and Secondary Education and Commissioner Infante-Green violated the IDEA and its implementing regulations, 20 U.S.C. § 1416(a)(1)(C), 34 C.F.R. § 300.600, by failing to effectively monitor DCYF's implementation of IDEA for children in residential treatment facilities. *Id.* ¶ 54. And fifth, Mr. Pontarelli argues that these alleged violations of the IDEA also constitute violations of the ADA, 42 U.S.C. § 12131 *et seq.*, and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. *Id.* ¶ 56-61.

The Defendants have moved to dismiss Mr. Pontarelli's complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. They make three arguments in support of their motion. First, they argue that, as neither a parent nor a student, but simply a concerned citizen with a potential procedural violation, Mr. Pontarelli lacks the injury-in-fact necessary for Article III standing. (ECF No. 15 at 11.) Second, they argue that Mr. Pontarelli failed to exhaust his administrative

remedies, under the IDEA, 20 U.S.C. 1415(l). *Id.* at 13. And third, they argue that Mr. Pontarelli has failed to state a claim upon which relief can be granted because his complaint does not include specific enough factual allegations and the Defendants have shown that they have satisfied IDEA's interagency coordination requirements. *Id.* at 17-19. In addition, Governor McKee and DCYF filed a supplemental Motion to Dismiss arguing that, because they are not educational agencies responsible for administering the IDEA, they cannot afford any relief to the violations alleged by Mr. Pontarelli. (ECF No. 16.)

## II. STANDARD OF REVIEW

On a motion to dismiss under either Rule 12(b)(1) or Rule 12(b)(6), the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007). Federal courts are courts of limited jurisdiction, and plaintiffs bear the burden of establishing subject matter jurisdiction over their claims. *See e.g., Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102–04 (1998). A complaint must be dismissed pursuant to Rule 12(b)(1) where a plaintiff fails to meet this burden. *See* Fed. R. Civ. P. 12(b)(1); *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994). Further, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## III. DISCUSSION

This case presents both a simple question of law and a significantly concerning question of public policy. The question of law is whether Mr. Pontarelli has standing to pursue this action, and the Court finds that he does not. Article III of the Constitution limits "[t]he judicial Power" to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1; *see Kerin v. Titeflex Corp.*, 770 F.3d 978, 981 (1st Cir. 2014). "To satisfy th[e] standing requirement, a plaintiff must sufficiently plead three elements: injury in fact, traceability, and redressability." *Id.* "An 'injury in fact' is 'an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.'" *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted)). Mr. Pontarelli claims that he has suffered such an injury in fact because § 34 CFR 300.153 provides that any "individual" may file an administrative complaint alleging a violation of the IDEA. (ECF No. 17 at 2-3.) By refusing to investigate the SACs he filed, Mr. Pontarelli argues, RIDE nullified his rights under § 34 CFR 300.153 and caused an injury to him that this Court could rectify. *Id.*

But the Supreme Court has held that a plaintiff cannot "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016); *see also Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) ("deprivation of a procedural right without some concrete interest that is affected by the deprivation" is not enough to create Article III standing). Ultimately, Mr. Pontarelli has not articulated an

injury to himself that extends beyond "a bare procedural violation," *Spokeo*, 578 U.S. at 342, and as such the Court cannot find that he has established standing to pursue this complaint.[1]

However, the Court would be remiss if it failed to acknowledge the potentially concerning real-world implications of this ruling. Defendants argued repeatedly in their materials that Mr. Pontarelli's action must fail because he is not alleging that he himself has been deprived of a FAPE or is the parent of a child who has been so deprived. (ECF No. 3.) But if these were absolute requirements to sue over violations of the IDEA, then minors in DCYF care such as those referenced in Mr. Pontarelli's complaint – who cannot bring a legal challenge themselves and likely do not have parents in their lives to sue on their behalf – would have no ability to vindicate their rights under that statute. It would be very troubling indeed if jurisdictional obstacles caused the most vulnerable children in our state to fall through the cracks of a federal statute that was largely designed to protect children from falling through the cracks.[2]

There are other ways, however, for such children to have their rights vindicated. First there is the Child Advocate, who has the power to "take all possible action including, but not limited to, programs of public education, legislative

---

[1] Because the Court is dismissing Mr. Pontarelli's action for lack of standing, it declines to rule on Defendants' separate arguments related to exhaustion of administrative remedies and failure to state a claim upon which relief may be granted.

[2] It is worth stating here that, if the *WPRI 12 News* article quoted in Mr. Pontarelli's SAC is correct – if, as the Child Advocate said, there are dozens of children being warehoused in hospitals who are "not leaving their room, not going to school, not going outside" for multiple years at a time – then clearly our most vulnerable children are being allowed to fall through the cracks. (ECF 13-2 at 3.)

advocacy, and formal legal action, to secure and ensure the legal, civil, and special rights of children" that are under DCYF custody. R.I.G.L. § 42-73-7. Second there is the mechanism of "Next Friend" standing. Fed. R. Civ. P. 17(c)(2) provides that a "minor or incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem." In fact, the First Circuit has specifically instructed that "[i]mportant social interests are advanced by allowing minors access to a judicial forum to vindicate their constitutional rights through a Next Friend that the court finds has a good faith interest in pursuing a federal claim on the minor's behalf; particularly where [ ] the minors seek relief for alleged violations of the guardian's duty to protect them." *Sam M. ex rel. Elliott v. Carcieri*, 608 F.3d 77, 91-92 (1st Cir. 2010).

Notably for Mr. Pontarelli, the First Circuit held in that same case that when vindicating the rights of foster care children, "a significant relationship [between the plaintiff and the putative Next Friend] need not be required as a prerequisite to Next Friend status." *Id.* at 91. It then determined that a sociology professor could be an appropriate Next Friend to child plaintiffs alleging systemic deficiencies in Rhode Island's foster care systems because "due to his expertise and research he ha[d] a good faith desire to pursue the children's best interests in federal court," even though he had never personally met the plaintiffs. *Id.* at 93. It seems possible, then, that a concerned advocate such as Mr. Pontarelli could, in some circumstances, pursue legal action on behalf of children in DCYF care to vindicate their rights under the IDEA. It is likely, however, that such an action would require named plaintiffs as the true

8

parties in interest, rather than the anonymous children referenced in Mr. Pontarelli's complaint.

With these potential recourses in mind, the defendant's Motion to Dismiss for lack of subject matter jurisdiction (ECF No. 15) is GRANTED and Mr. Pontarelli's claims are dismissed without prejudice.

IT IS SO ORDERED.

_____
Mary S. McElroy,
United States District Judge

January 19, 2023